IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE  DIVISION

| | | |
|---|---|---|
| Leslie Daniel, | ) | Civil Action No.  8:07-4146-HMH-BHH |
| | ) | |
| Plaintiff,) | | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Pickens County Sheriff Department and) | | |
| C. David Stone, in his individual and | ) | |
| official capacity as Sheriff of Pickens | ) | |
| County Sheriff Department, South | ) | |
| Carolina, | ) | |
| | ) | |
| Defendants.) | | |
| _____ | ) | |

This matter is before the Court on the defendant's motion for summary judgment
pursuant to Federal Rule of Civil Procedure 56 and motion to dismiss pursuant to
Federal Rule of Civil Procedure 12. [Doc. 56.]   There is some dispute between the
parties as to the precise claims intended by the plaintiff.   Based on the Court's
interpretation of the Complaint and the plaintiff's representations, it appears that the
plaintiff has plead, and intends, claims for discrimination, on account of her race and
gender, and for retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as
amended, and 42 U.S.C. § 1983.   She has also plead a claim for a hostile work
environment on account of her race and gender.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A),
and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination
cases are referred to a United States Magistrate Judge for consideration.

1

## FACTS PRESENTED

The plaintiff, a black female, began her employment with the defendant Sheriff's Office in 1990.  The plaintiff began her career as a dispatcher, but a year later, was promoted to a Detention Center Deputy.  (Pl. Dep. at 30-31.)  Thereafter, the plaintiff was promoted from Deputy to Sergeant in the Detention Center.  (Id. at 31, 34-36.)

In 1995, the Sheriff's Office posted a position for a juvenile detective. The plaintiff submitted a letter of interest for the position because her "goal in law enforcement was to work with juveniles." *Id*. at 39-41.  The plaintiff was selected, effective July 30, 1995. *Id*.

On August 10 & 11, 2004, the plaintiff was counseled for work performance issues, including a failure to complete supplemental reports related to her case assignments.  (Pl. Dep. at 45, 52, 54, 72-74, Ex. 13; Kelly Dep. at 113-14, 16.)  On August 12, the plaintiff filed an internal complaint suggesting that she had been passed over for promotions and transfers as the result of a "**GLASS CEILING**."  [Daniel Dep. at 182-84, Ex. 14 (emphasis in original).)

The plaintiff later submitted a "General Intake Questionnaire" to the EEOC alleging discrimination, on September 28, 2004.  (Pl. Dep., Ex. 18.)  The plaintiff declined to file a charge of discrimination at that time because she was waiting to see if she would be promoted.  (Pl. Dep. at 207-08, Exs. 21, 27.)

The plaintiff contends that she was later passed over for various promotions and lateral transfers.  (See Pl. Aff. ¶ 21.)  The defendants contend that during that same

2

period of time various internal and community complaints were made concerning the plaintiff.

On August 1, 2005, Lieutenant J.B. Kelly again counseled Daniel about her failure to complete supplemental reports on her cases. It is undisputed that, since January 22, 2005, the plaintiff had not completed supplemental reports in 45 of her cases. Later that month, on August 10, 2005, the plaintiff got into a verbal confrontation with a Detective Larry Martin, when Martin attempted to assign her cases. (Pl. Dep. 80, 83-84, 114-15.)

A day later, defendant Sheriff David Stone approached the plaintiff concerning the altercation, as well as some citizen complaints regarding the plaintiff. (Pl. Dep. At 216-17.) Based on these issues, as well as the plaintiff's difficulties with completing her supplemental reports, Stone demoted her and transferred the plaintiff to a detention center. (Stone Dep. at 11-12, 18.) After the plaintiff threatened to resign, Stone asked her to reconsider. The plaintiff accepted the demotion, but for reasons unrelated to this case was ultimately put on probation in March 2006 for 6 months. *Id*., Ex. 30, 31.

The plaintiff filed a Charge of Discrimination on August 29, 2005. (Pl. Dep., Exs. 25, 26.) The plaintiff filed this lawsuit on December 26, 2007.

The Court will discuss other facts in greater detail as relevant to the legal analysis.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

3

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary

4

judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

As an initial matter the Court would mention that the plaintiff has not in any respect made her evidence and, ultimately her claims, easy to entertain. As was immediately obvious to the Court, and as noted by the defendant, there is hardly a record cite in the plaintiff's entire substantive defense of her claims. She has submitted an affidavit that is only summarily referenced in her memorandum, which in fact has a

significant degree of detailed allegation, certainly in comparison to the memorandum itself. Generally, the critical elements of that detail are neither recounted in her response brief, expressly, nor specifically cited. For example, buried seven pages into her affidavit, the plaintiff identifies the exact dates she claims that she was denied lateral moves or promotions and the express names of six allegedly lesser qualified white persons who were promoted over her. As far as the Court can tell, none of these individuals or instances are referenced in her brief.[1] This is remarkable on two accounts.

First, the local rules make it clear that memoranda "supported by discovery material shall specify with particularity the portion of the discovery material relied upon in support of counsel's position." Local Rule 7.06 DSC. It is not the Court's responsibility to comb the voluminous record for issues of fact. Second, out of sheer self-interest, it is to the plaintiff's every advantage to actually reference her evidence in her brief. But for the Court's own efforts to examine her case, there would have been virtually nothing to consider.

Notwithstanding these difficulties, the Court has thoroughly reviewed the record before it and is assured that there exist no issues of fact from which a reasonable jury could find in the plaintiff's favor on any of her claims. The Court will address them in turn.

---

[1] Amazingly, the plaintiff does refer to Joey Duncan in her brief but only in regards to his use of the word "nigger-ing" and not in relation to any promotion decision.

I.    RACE DISCRIMINATION (FAILURE TO PROMOTE)

The plaintiff first contends that she was discriminated against on account of her race and gender[2] in that the defendants denied her requests for lateral transfers and promotions. The plaintiff alleges that the defendants promoted and transferred less qualified, white males instead of her.

As the Fourth Circuit has explained,  the plaintiff may avert the defendant's summary judgment motion and establish her failure to promote claim "through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*,  416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added).  A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race or gender motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m).

Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at

---

[2]  The plaintiff alleges discrimination based on her inclusion in both protected classes.  In regards to all of her claims, the Court's analysis applies with equal force to both classes, except where otherwise expressly differentiated.

7

285.  The plaintiff does not attempt to establish her discrimination or retaliation claim using direct or circumstantial evidence but relies exclusively on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action.  If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.  *See McDonnell Douglas*, 411 U.S. at 802-05.[3]

Both the plaintiff's Title VII and Section 1983 claims are properly considered under *McDonnell Douglas*.  *See Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir.2004).

A.    *Prima Facie* **Case**

To establish her *prima facie* case of a discriminatory failure to promote, the plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for the position in question; (3) that she was qualified for that position; and (4) that the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination.[4] *See Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-

_____

[3]  The plaintiff relies on *McDonnell Douglas* both in regards to her failure to promote and retaliation claims.

[4]  It appears that the defendant has viewed the failure to promote claim as part of the plaintiff's retaliation claim.  In other words, the defendant has interpreted the plaintiff's claim to allege that the defendant retaliated *through* a refusal to promote or transfer.  The Court believes, however, that the allegations regarding promotion and

8

45 (4th Cir. 2003); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995).

The plaintiff contends that she was discriminated against in regards to requested promotions or transfers in the following instances:

- **June 2001**    Denied promotion to Lieutenant in favor of allegedly lesser qualified white individual, L.B. Kelly

- **June 2001 through August 2005**    "Denied various additional promotions and lateral moves"

(Pl. Aff. ¶ 21.)  The Court will address each in turn.

## A.    June 2001 Denial of Promotion

As to the June 2001 request for promotion, the plaintiff's claim is time barred. Any discrimination occurring in June 2001, would be outside the statute of limitations under either Title VII or 42 U.S.C. § 1983.   It is well-established that prior to bringing a lawsuit under Title VII, a plaintiff must have filed a charge of discrimination with the EEOC.  42 U.S.C. § 2000e-5(e); *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The plaintiff was required to file her Charge of Discrimination with the EEOC within 300 days of each alleged unlawful act.   *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009); *accord* 42 U.S.C. § 2000e-5(e)(1).

It is undisputed that the plaintiff filed a Charge of Discrimination on August 29, 2005.  (Pl. Dep., Exs. 25, 26.)  The plaintiff had previously submitted a "General Intake

---

transfer form a distinct claim that must be separately evaluated.

Questionnaire" to the EEOC alleging discrimination, on September 28, 2004. (Pl. Dep., Ex. 18.) Any discrimination in June 2001, would have been well over 900 days prior to the date when she first submitted the EEOC questionnaire and significantly more in relation to the time when the actual Charge was filed. Such alleged discrimination, in June 2001, therefore, is time barred and will not be considered in the context of Title VII. Nor will the Court consider any other claim arising prior to 300 days before August 29, 2005, or approximately November 2004.

Likewise, the June 2001 incident may not be considered pursuant to 42 U.S.C. § 1983. As Section 1983 does not contain a statute of limitations, courts must apply the most analogous state statute of limitations. *See Thorn v. Jefferson-Pilot Life Ins.*, Co., 445 F.3d 311, 320 (4th Cir. 2006); *Wade v. Danek Medical*, Inc., 182 F.3d 281, 289 (4th Cir. 1999). South Carolina generally provides a three-year statute of limitations for personal injury actions. S.C. Code § 15-3-530(5). This is an appropriately analogous state statute of limitations from which to borrow, in an employment discrimination lawsuit. *See, e.g., Grattan v. Burnett*, 710 F.2d 160, 162 (4th Cir. 1983) (borrowing Maryland 3-year limitations period in an employment discrimination suit).

The plaintiff filed her Complaint on December 26, 2007, six years after the June 2001 denial of promotion. [Doc. 1.] Accordingly, the Court may not consider it.

The plaintiff has made a largely indecipherable argument that Section 1983 has no statute of limitations whatsoever because it somehow runs "parallel" to Title VII:

> However, since this is an employment discrimination action and a public employee suffering from discrimination may assert claims under U.S.C., Section 19983 [sic] **in addition**

> **to claims under Title VII in the same suit**, these Plaintiff's
> claims of discrimination which took place prior to December
> 26, 2004 are not barred against the Defendant Sheriff Stone
> . . .

(Pl. Resp. at 18) (emphasis in original) (citations omitted).  Whether or not the plaintiff is

entitled to plead claims under both Title VII and Section 1983, is immaterial.  The issue

is whether such claims are timely.  Because the June 2001 incident occurred over 6

years prior to the filing of her Complaint, it cannot now be considered.  Without

explanation, the plaintiff cites *Brown v. Hartshorne Public School Dist.*, 864 F.2d 680

(10th Cir. 1988) in support.  But, that case only affirms the undisputed: that both types

of claims may be pled and that there is no exhaustion requirement under Section 1983.

*Id.* at 683-84.  The case says nothing, however, regarding the applicable statute of

limitations under Section 1983.  *Brown*, therefore, does not persuade the Court

differently.  The June 2001 incident is time barred under Section 1983.

### B.    November 2004 through August 2005 Denials of Promotion

The plaintiff's entire argument regarding these denials of promotion in her

response brief consists of this sentence:

> That further, as testified by the Plaintiff in her Affidavit,
> subsequent to June, 2001 and until the present time, the
> Plaintiff has been continuously and frequently passed over
> and denied promotions and/or lateral moves to various and
> sundry positions by the Pickens County Sheriff Department
> and Sheriff David Stone, in favor of less qualified and sundry
> white males.

(Pl. Resp. at 4.)  The plaintiff's brief does not include any discussion of (1) the positions

for which she allegedly applied; (2) the qualifications for such positions; (3) the dates on

which she applied;(4) the identities of white individuals she claims received the

11

promotions but who were less qualified; or (5) the alleged inferior qualifications of any such individuals. Instead she has made only generic reference to her accompanying Affidavit. There is no citation to any other evidence concerning these matters.

A review of her Affidavit, however, reveals the following additional detail. The plaintiff contends that she was denied "three (3) lateral moves and/or promotions to the Adult Detective Division in December, 2004; July 2005; and September, 2005 to which lesser qualified white males were selected each time." (Pl. Aff. ¶ 21 (emphasis in original).) The plaintiff then lists the "following lesser qualified white persons [who] were promoted to these positions":

1. Brett Barwick, a white male, was promoted as an Adult Detective;

2. Joey Duncan, a white male, was promoted from Juvenile Detective to an Adult Detective;

3. Keith Galloway, a white male, was promoted from the Road to a Detective;

4. Brian Boling, a white male, was promoted from the Road to a Detective;

5. Henry Campbell, a white male, was promoted from the Road to Narcotics;

6. Marvin Nix, a white male , was promoted from School Resource to Narcotics; [sic]

(Pl. Aff. ¶ 21.) Although never referenced a single time in her brief and only confirmed by the Court's independent investigation, the plaintiff's deposition testimony is essentially consistent with these allegations. (Pl. Dep. at 164-67.) And while the Court finds this evidence – between the testimony and affidavit – almost unacceptably nonspecific as to the precise positions applied for and the time of application, it probably

constitutes, by the very thinnest of margins, evidence sufficient to create an issue of fact as to the second element of her *prima facie* case – that she applied for some position. She would certainly have personal knowledge of her own attempts at application.  It would be the juries job to determine the credibility of those representations, in spite of their general nonspecificity.  But, these are facts about which one would surely expect documentation to exist and, to the extent it does, the plaintiff has not directed the Court's attention to it.  When asked whether she had any documents related to her applications for these positions, the plaintiff responded, "I might have a letter somewhere.  I mean I am not sure.  He [the plaintiff's attorney] might have sent it to you if I had it."  (Pl. Dep. at 164.)

The want of specificity as to the positions also tends to make any determination of the plaintiff's qualification for such positions difficult.  While the plaintiff has gone to some length to establish her qualifications generally,[5] she has made no direct argument as to the specific qualifications for these positions and how she met each such qualification.

The defendant has not strongly argued either that the plaintiff did not apply for the alleged positions, whatever they may be, or that she was generally unqualified.  So the Court would not belabor either point.

But, even to the extent the Court could accept this evidence as some indication of the positions sought and that the plaintiff was qualified, the plaintiff's case still fails

---

[5]  The plaintiff has discussed her qualifications at length.  The Court does not dispute that the plaintiff was qualified for her job and probably numerous other positions. There is no need to recount her qualifications here, however, because she has made no effort to demonstrate how her qualifications fair in comparison to individuals who actually received the alleged positions.

because the plaintiff cannot establish the fourth element of her case that her application for these positions was rejected under circumstances giving rise to an inference of discrimination. This is true notwithstanding the Fourth Circuit's instruction that it is a "relatively easy test" to show that a qualified applicant, "'was rejected under [such] circumstances.'" *Evans*, 80 F.3d at 960. (quoting *Young v. Lehman*, 748 F.2d 194, 197 (4th Cir. 1985).

It is simply not enough that the plaintiff is a black female and that the promotions and transfers were given to white males. *See Holmes v. Bevilacqua*, 794 F.2d 142 (4th Cir. 1986). "[T]he naked fact that one not in the protected class receives the benefit sought by the protected plaintiff, or is spared the hardship the plaintiff hoped to avoid, cannot be sufficient to satisfy the purposes of the fourth McDonnell-Douglas prong." *Barnhill v. Aratex Services, Inc.*, 1987 WL 44690, at *2 (4th Cir. August 28, 1987) (citing *Holmes*). To satisfy the fourth element, the plaintiff must point to "some evidence that race was a determining factor in the employer's decision." *Holmes*, 794 F.2d at 147.

The plaintiff has not produced any such evidence. The most obvious way of satisfying the fourth element would have been to establish her qualifications as compared to the individuals who received the promotions or transfers. She has made no effort to do so.

No reasonable jury could conclude that the plaintiff established the elements of a prima facie case of a discriminatory failure to promote. The plaintiff has not met her burden to create issues of fact as to the fourth element.

## II.    Retaliation

Next, the plaintiff contends that she was retaliated against for having filed an

14

internal complaint in August 2004, when she was demoted in August 2005 and when she was denied various requests for lateral transfers and promotions, as discussed above.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  The *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies in analyzing retaliation claims under Title VII. *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000).  As stated, the defendant does not attempt to use direct evidence to establish her claim of retaliation.

### A.    *Prima Face* Case

In order to establish a *prima facie* case of Title VII retaliation, the plaintiff must prove three elements: (1) that she engaged in a protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action.  *See EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

The defendants contend that the plaintiff cannot establish either the first or third elements of her prima facie case.  Specifically, the defendants dispute that the plaintiff engaged in any protected activity prior to her August 2005 demotion or that there exists a causal connection between any such protected activity and the decision to demote

15

her.  The Court, however, need not engage a detailed treatment of those issues.[6]  Even

if the plaintiff could establish a *prima facie* case, her claim would fail.  She indisputably

has not come forward with any evidence that the defendants' reasons for demotion

were, in fact, pretextual.

The defendants have put forward the following legitimate non-discriminatory

reasons for the August 2005 demotion: (1) for failing to complete supplemental reports

on over one-half of her cases (45 out of 74) from January 22 to August 2005  (Daniel

---

[6]  Liberally viewing the evidence, the Court would conclude that the plaintiff engaged in protected activity.  The plaintiff internally complained concerning unlawful discrimination in August 2004.   (Daniel Dep. at Ex. 16, "Daniel EEOC 00012-15".)  In that complaint, the plaintiff claimed to be more qualified than the individuals who received a promotion and two lateral transfers in which she was interested.  *Id.*  The plaintiff then questioned whether she had reached the "infamous GLASS CEILING within the PCSO."  *Id.*  The defendants would argue that inclusion of the phrase "glass ceiling" somehow would not have put the defendants on notice that the plaintiff was complaining of discrimination.

The Court would disagree.  "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."  *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998).  "As long as an employee complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection under § 704's opposition clause."  *Kubicko v. Ogden Logistics Serv.*, 181 F.3d 544, 551 (4th Cir. 1999).

Here, the plaintiff clearly complained of discrimination and employed a phrase, in "glass ceiling," which has colloquially come to imply a discriminatory limitation imposed upon women.  The Court finds the cases cited by the plaintiff concerning that phrase either wholly distinguishable on the facts or inapposite for not concerning an analysis of protected activity.

As to the causation issue, there is insufficient temporal proximity between the August 2004 complaint and her demotion almost a year later.  That lapse in time "negates any inference that a causal connection exists between the two."  *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998) (year and a half); *see also Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("[T]hirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation.") The plaintiff would not recommend that the plaintiff could satisfy the third element of her *prima facie* case.

Dep. at Exs. 16, "Daniel_EEOC_00008," n.1 and 23); (2) her verbal assault of a Detective Martin (Pl. Dep. at 79-81); and (3) other complaints against her concerning her work performance. (See Def. Mem. Supp. Summ. J. at 29; see generally Stone Dep. at 12.) "Job performance" is widely recognized as a "valid, non-discriminatory bas[i]s for any adverse employment decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.")

The plaintiff has not put forward any evidence from which a reasonable jury could conclude that these reasons were, in fact, a pretext for discrimination. The Court will address each in turn.

### 1.    Supplemental reports

The plaintiff does not dispute that she failed to complete supplemental reports in the cases identified by the defendant. (Pl. Dep. at 246-47.) Moreover, the plaintiff had previously been counseled regarding her failure to complete supplemental reports and was offered assistance. (Pl. Dep. at 45, 72-74, Ex. 13; Kelly Dep. at 113-14, 16.)

Instead, the plaintiff attempts to show that the proffered reason is pretextual by making excuse for her performance failure and accusing others of similar deficiency. Neither response is persuasive nor constitutes evidence of pretext. The plaintiff initially contends that she was late with her supplemental reports because she was helping other individuals on their reports. She has submitted evidence to that end. (Chappell

17

Dep. at 8-11.)  Notwithstanding, she admits that she received help on her own reports from Debbie Chappell, Rita Brugess, and Kim Duncan (Pl. Dep. at 246-47) and the defendants have submitted undisputed evidence that she had a lighter caseload than other detectives in 2005.  (Kelly Aff. ¶ 6.)  So issues of fact exist as to whether or not her efforts to assist others with their reports could even be reasonably viewed as a justification for having been behind on her own.

But, even if the plaintiff's evidence has a tendency to explain her tardiness on some level, it does not constitute evidence of *untruthfulness* in the defendants' proffered explanation.  The plaintiff has not come forward with evidence that the defendant was aware that she had helped others to her own detriment, at the time of the demotion, or evidence that they should have found that excuse a justifiable one, even to the extent they were aware.  The issue is not whether the reason for an employer's adverse employment action "was wise, fair, *or even correct*, ultimately, so long as it truly was the reason for the [adverse employment action]."    *See Dugan v. Albemarle County School Bd.*, 293 F.3d 716, 722 (4th Cir. 2002) (emphasis added).  Pretext analysis does not convert Title VII into a vehicle for challenging unfair – but nondiscriminatory – employment decisions. *See Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989) (Title VII).  Even if the defendants were mistaken as to the circumstances around her failure to complete the reports that would not make their actions pretextual.  The evidence amounts to nothing more than a post-hoc rationalization for her failure to prepare the reports.  It does not make the reason a false one.  Alternatively, the plaintiff has not produced any evidence that even if the defendants were aware of her professed

18

explanation that they were somehow unreasonable in rejecting that excuse as sufficient. As stated, the undisputed evidence is that the plaintiff was helped with hers as well. (See also Smith Dep. at 24-25; Daniel Dep, Ex. 13.)   A jury could not draw any inference of pretext from the plaintiff's evidence of excuse.

The plaintiff further contends that the supplemental reports basis for her demotion is pretextual because Lieutenant Kelly and Sheriff Stone were also behind on their reports.  This argument fails for two reasons.  The plaintiff has produced no evidence that Kelly and Stone were behind on their reports; she simply asserts that they were.  The plaintiff's own rote belief or opinion, however, is not enough to withstand summary judgment.  *See Evans*, 80 F.3d at 960 (unsupported speculation insufficient); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (plaintiff's own assertions insufficient to defeat summary judgment); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (conclusory assertions are insufficient).  Moreover, the plaintiff cannot compare herself to her supervisors, who are not similarly-situated employees.  *See Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511-12 (4th Cir. 1993); *accord Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F. Supp. 2d. 577, 584-85 (D. Md. 2005).  Not only can she not compare herself with her supervisors but she has not demonstrated that those individuals had a "combination of offenses," comparable to those that justified her own demotion.  *Cook*, 988 F.2d at 511.

The plaintiff has not produced any evidence that the supplemental reports reason was not, in fact, part of the defendants's real reason for demotion.  It is undisputed that she was substantially behind on the reports and she has not shown that any similarly

situated white, male was also behind on their reports but not demoted.  *See Waggoner v. City of Garland*, 987 F.2d 1160, 1156-66 (1993) ("[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.").

### 2.    Verbal assault

Likewise, the plaintiff has made no effort whatsoever to dispute that she verbally assaulted Detective Larry Martin.   The uncontested evidence is that Detective Larry Martin was asked to assign cases, on August 10, 2005, and that he was specifically asked to assign all juvenile cases to the plaintiff, who was the only juvenile detective available that day. (Smith Dep. at 18; Kelly Dep. at 22; Martin Dep. at 9-11; Daniel Dep. at 79-80, 84.)  It is further undisputed that when Martin assigned her a second case, the plaintiff threw the case across the conference table at Martin and said,

> Well, I said dog, I must be a ibonic [sic] woman. How am I going to be in court and work this rape case? . . . Well, then Larry put my name on another case, and it come around and, Larry, hold up, I said this mailbox here you can give to Lieutenant [or] Culbreath, whichever one next. I said because I got this rape case and I got to go to court. I said you need to put their name on that because that can be handled at another time.

(Pl. Dep. at 80, 83-84, 114-115; Martin Dep. 12-13, 18.)   Martin explained that Lieutenant Kelly told him to assign her the cases and if she had a complaint about that, she needed to talk to Lieutenant Kelly about it.  The plaintiff  responded, "[W]hen you get balls enough to work a sex case, I said then talk to me. I said until then go work your mailboxes. . . ." (Daniel Dep. at 81; Martin Dep. at 14.)

As stated, the plaintiff makes no attempt to dispute the incident or to demonstrate

that this verbal altercation did not, in fact, for part of the defendants' real reason for demoting her.

### 3.   Other complaints

The plaintiff lastly contends that the defendants' claim that complaints from the community formed a part of their rationale for demotion is also pretextual.  The plaintiff vehemently contends that she was *unaware* of such complaints in her file and that, by policy, she was entitled to be made aware of them (Stone Dep. at 11).  The plaintiff argues, therefore, that the defendants' violation of its own policy amounts to evidence of pretext.  The Court disagrees.  The plaintiff admits to being aware of at least one complaint against her, made in April 2005  (Pl. Dep. at 205-06, Ex. 20), and the defendant has submitted unrebutted evidence that other complaints were discussed with the plaintiff.  (Kelley Dep. at 11.)  But, to the extent there were some complaints of which she was unaware, her awareness of the one seems to generally render her point moot.  The defendant was consistent with its policy regarding the April 2005 complaint and its reliance, in part, on that complaint was justified and, therefore, non-suspicious such that a jury should not be permitted to infer pretext from it.  In light of the other two undisputed, legitimate and non-discriminatory bases for demotion, any irregular deviation from policy simply does not raise the inference that the plaintiff would wish. "[T]o focus on one piece of the record without considering the whole would distort the permissible inferences to be drawn.  *Cook*, 988 F.2d at 512.

Moreover, "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal

21

discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995); *accord Butler v. Berkeley County Sch. Dist.*, No. 2:98-369-2-11, 2000 WL 33158371, at *5 (D.S.C. Mar. 29, 2000).

The plaintiff has not rebutted the defendants' non-discriminatory rationales for demotion. As a result, her retaliation claim fails. The plaintiff is mistaken that evidence of "nondiscriminatory reasons only poses factual questions for the fact-finder to resolve at trial . . . ." (Pl. Resp. at 25 (emphasis in original).) Once the defendants articulated a legitimate, non-retaliatory reason for the demotion, the onus was squarely on the plaintiff to demonstrate that the non-retaliatory reasons are a mere pretext for unlawful retaliation. *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993); E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). As the defendants note, the Fourth Circuit has repeatedly granted summary judgment to employers where the plaintiff has failed to prove that the employer's reasons are pretextual and that discrimination is the real reason for the adverse actions. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000); *Smith v. First Union Nat. Bank*, 202 F.3d 234, 249 (4th Cir. 2000). The plaintiff has created no issues of fact as to the veracity of the defendants' reasons for demotion.

The plaintiff also summarily contends that the denials of the unspecified promotions and transfers in 2004 and 2005, previously discussed, were done in retaliation for the August 2004 complaint. But as the defendants confess and as the Court has essentially already concluded, the nonspecificity of those alleged requests for

22

promotions and transfers render any consideration of a retaliation claim based on them utterly impossible.  The Court generally conceded that the plaintiff's evidence might be sufficient to establish that she applied for some unspecified position, for purposes of satisfying the second prong of a *prima facie* case of her failure to promote claim.  The evidence as described above cannot possibly create issues of fact as to an adverse employment action taken against her for purposes of a retaliation claim, however.  *See EEOC,* 424 F.3d at 406.  As discussed, the plaintiff has made no real effort to establish that she applied for any positions or that she was denied them and under what circumstances.  A reasonable jury could not find on the vague facts alleged that the plaintiff had established a *prima facie* case of retaliation based on any denial of alleged requests for promotion or transfer.

III.    **Hostile Work Environment Claim**

Lastly, the plaintiff contends that the defendants created a hostile work environment on account of her race and gender.  To establish a hostile work environment claim, the plaintiff must prove by a preponderance of the evidence that she was subjected to (1) unwelcome harassment; (2) based on her race; (3) that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere; and (4) that is imputable to Sheriff Stone. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).

This claim is specious.  First, the plaintiff complains that Hispanics were referred to as "Mexicans."  (Chappell Dep. at 14.)  Even if true, such remarks cannot constitute evidence of harassment on account of the plaintiff race as *a black woman*.

23

Second, the plaintiff contends that unnamed individuals made comments about female victims and their weight. *Id*. The plaintiff contends that these unnamed individuals, on unspecified occasions, said that they would not "call" these women, presumably for a date or relations, on account of their weight. The evidence is inadmissible hearsay and simply not probative for its overwhelming nonspecificity. Finally, crediting this evidence as far as the Court could, it fails to evidence either severe or pervasive conduct.

The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir.2003) (en banc). First, the plaintiff must show that she "subjectively perceive[d] the environment to be abusive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Next, the plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).

The plaintiff does not contend that these statements were personally offensive to her, although such a claim may reasonably be implicit in the fact that she brought the suit. Regardless, the Court finds no genuine issue remains as to the objective inquiry, however. The objective inquiry "is not, and by its nature cannot be, a mathematically precise test." *Harris,* 510 U.S. at 22. Rather, when determining whether the harassing conduct was objectively "severe or pervasive," we must look "at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is

24

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 23; *Ocheltree*, 335 F.3d at 333. "[N]o single factor is" dispositive, *Harris*, 510 U.S. at 23, as "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed," *Oncale*, 523 U.S. at 81-82.

The plaintiff has produced no evidence that these comments were frequent, that they were threatening to her, or that they in any way interfered with her job performance. *See Harris*, 570 U.S. at 23. Moreover, "isolated incidents," unless extremely serious, will not support a claim for a hostile work environment claim. No reasonable jury could conclude from the plaintiff's vague evidence of comments about weight that she had suffered "persistent, demeaning, unrelenting, and widespread" harassment on account of her gender. *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 984 (4th Cir.1997).

For the same reasons, Joey Duncan's use of the word "nigger-rig" in the plaintiff's presence, in 2000, cannot form any basis for a claim that the plaintiff's work environment was somehow permeated with racial animus.[7] Moreover, as stated, that isolated incident is not actionable, as it is untimely under both Title VII and Section

---

[7] While in the field interviewing a citizen, Duncan said, "You done let your husband nigger-rig the car." (Daniel Dep. at 74.) The report was sent up the chain of command and Duncan was disciplined. *Id*. at 75-76.

1983.[8]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for summary judgment [Doc. 56] be granted and all claims dismissed with prejudice.

IT IS SO RECOMMENDED.


s/Bruce H.  Hendricks
United States Magistrate Judge

June 23, 2009
Greenville, South Carolina.

---

[8]  The defendants have also moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss some of the plaintiff's claims for failure to plead sufficient facts upon which relief can be granted.  The defendants have further argued that certain of the plaintiff's claims were not properly exhausted insofar as the charge of discrimination filed with the EEOC was not specific enough to encompass them.  The Court need not reach these arguments in any serious detail because the case, in its entirety, should be dismissed for the reasons recited herein.  But the Court has reviewed these other arguments and would not be inclined to recommend dismissal based upon them.  The defendants have also made arguments regarding qualified immunity for the plaintiff's Section 1983 claim, which the Court need not consider.